Loretta **BURRELL**, Linda L. Brown, Catherine McAfee, John Grant, John McDowell, Phyllis Miller, Susan Robertson, and Karen Sloan, Individually and on behalf of those similarly situated, Plaintiffs,

v.

**CROWN CENTRAL PETROLEUM, INC., Defendant.**

No. 1:97CV357.

United States District Court, E.D. Texas, Beaumont Division.

Nov. 21, 2000.

Thomas Walter Umphrey, James Erick Pyane, Provost & Umphrey, Beaumont, TX, Michael E. Hausfield, Victoria C. Arthaud, Joseph M. Sellers, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Reuben A. Guttman, Brian P. McCafferty, Charles V. Firth, Prost & Umphrey, Washington, DC, Cyrus Mehri, Pamela Coukos, Mehri, Malkin & Ross, Washington, DC, for plaintiffs.

James V. Carroll, III, Mark E. Schwartz, Anne Gibson Bruckner, Littler, Mendelson, Houston, TX, for defendant.

*MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF LORETTA ·BURRELL'S CLAIMS*

SCHELL, District Judge.

Before the court is Defendant's Motion for Partial Summary Judgment on Plaintiff

Loretta Burrell's Claims, filed May 15, 1998. Plaintiff filed her opposition on June 22, 1998, and a supplemental opposition on July 16, 1998. Defendant filed a reply on July 20, 1998. After consideration of the motion, oppositions and reply, the court is of the opinion that Defendant's Motion should be GRANTED.

## I. BACKGROUND

The facts and allegations surrounding this lawsuit can be found in previous orders of this court. *See Burrell v. Crown Cent. Petroleum, Inc.*, 177 F.R.D. 376 (E.D.Tex.1997); *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239 (E.D.Tex. 1997). Loretta Burrell ("Burrell"), an African-American female, along with six other employees of Defendant Crown Central Petroleum's ("Crown") Pasadena refinery and one employee of LaGloria Oil and Gas Company (a wholly owned subsidiary of Crown), filed this lawsuit alleging that they were victims of race and/or sex discrimination.[1] Specifically, Burrell claims that during her tenure at Crown she was subjected to both a racially and sexually hostile work environment in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5, et seq. ("Title VII") and the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981 ("Section 1981").[2]

Burrell began her employment with Crown in April of 1979, working as a Telex Operator at Crown's Supply and Transfer facility in Bellaire, Texas. Burrell is currently employed as an Administrative Assistant I in Crown's Operations Department in Pasadena, Texas. Through her complaint, Burrell alleges that she has been subjected to severe and pervasive racial and sexual harassment since arriving at Crown's Pasadena Refinery in 1987.

With respect to her racially hostile work environment claim, Burrell recalls several offensive incidents (one prank and four comments), which she contends were racially motivated. In 1994 or 1995, Burrell allegedly discovered a dead mouse in the Operations Department's fax basket, which is located behind her desk. Burrell testified that when she saw the mouse, she "hollered" and a shift foreman emerged laughing. According to Burrell, the shift foreman (whose identity she cannot recall) admitted that he placed the mouse in the basket. The foreman then allegedly picked up the mouse and threw it away. Although the foreman said nothing that led Burrell to believe that the incident was racially motivated, she contends that it was. Burrell never complained to anyone at Crown about the dead mouse incident.

The second incident complained of occurred when a temporary employee remarked to Burrell that she looked like the actress Whoopi Goldberg. According to Burrell, she was working in the lab and wearing a red hat when the employee made the comment. Burrell responded by asking the employee "Do you think all

---

1. On April 12, 1999, the eight named plaintiffs filed their Motion for Class Certification. Plaintiffs sought to certify a class of "[a]ll African–American and/or female persons employed at any Crown Central Petroleum facility in Texas at any time from June 30, 1995 to present, who have been or continue to be subjected to a hostile work environment based on race and/or sex." [Pls.' Mot. for Class Certification at 1] Relying of the Fifth Circuit's recent decision in *Allison v. Citgo*, 151 F.3d 402 (5th Cir.1998), the court concluded that Plaintiffs' proposed class was inappropriate for class certification under either Rule 23(b)(2) or (b)(3). [*See* Memorandum Opinion and Order Denying Plaintiffs' Motion for Class Certification dated November 21, 2000]

2. Initially, Loretta Burrell asserted twelve separate claims against Crown alleging that it had engaged in race and sex discrimination in violation of Title VII and § 1981 by (i) failing to promote her to eight different positions; (ii) transferring other employees during the lockout from their temporary assignment back to their permanent positions; and (iii) failing to take prompt remedial action against an alleged racially and sexually hostile work environment. After Crown filed its motion for partial summary judgment, however, Burrell dropped most of her claims. [*See* Pls.' Opp'n at 2, n. 1] Currently, her only remaining claims are that she was subject to both a racially and sexually hostile work environment during her tenure at Crown.

blacks look alike because they got a hat on? Why do I look like Whoopi Goldberg? What makes me look like Whoopi Goldberg?" Burrell testified that the employee replied "Well, you've got a hat on, you look like Whoopi Goldberg." Burrell admits that she never complained about the comment to anyone at Crown.

Burrell also claims that, Alvin Francis, a white shift foreman at the Pasadena refinery, made racially offensive remarks to her on two separate occasions. On one occasion, Francis commented, in reference to an obese African–American woman who was hit by a truck while crossing a freeway, "They must have thought that they hit a big cow." On another occasion, Burrell testified that Francis commented to her, "Aren't you sick of these honkies," referring to the Caucasian employees. Burrell stated that in response to these inappropriate comments, she "would just ignore him." Again, Burrell never reported the comments to anyone at Crown.

Finally, Burrell recalls a racially offensive comment made to her while she was working in the laboratory with a red bandana tied around her head. On this particular occasion, Burrell claims that a temporary employee remarked that she looked like Aunt Jemima with that "red rag tied around [her] head," and the employee inquired as to whether she was "fixing pancakes that night." According to Burrell, the other employees in the lab laughed and joked about the incident the next day. After Burrell announced that she did not think that the incident was "funny," however, the laughing stopped and that "was the end of it." Like the previous incidents, Burrell never reported the comments to her supervisor or to Crown's Human Resources Department.

Turning to her sexually hostile work environment claim, Burrell alleges that she was the target of open sexual advances by Crown employees. To support this charge, Burrell points to the frequent offensive touching by a co-worker and comments relayed to her regarding the shape of her body and the "way she walked down the hall." Specifically, Burrell claims that, Howard Hagen, a Crown chemist, brushed up against her, touching her hip or buttock, when ever he tried to get by her in the lab. Burrell testified that Hagen brushed up against her with such frequency that she cannot recall the number of times it happened. Here too, Burrell admits that she never complained about the offensive touching to anyone at Crown.

Burrell also claims that she was subjected to a sexually hostile work environment based on a comment that a female co-worker, Bernie Burns, relayed to her. According to Burrell, Burns stated that the "guys in operations" were always talking about Burrell's shape and the way she "walked down the hall."[3] Burrell testified that she did not know who made the comments, when the comments were made, or what was said about her shape or the way she walked. Again, Burrell did not notify her supervisor or the Human Resources Department about the comments.

In addition to the specific incidents mentioned above, Burrell also claims to have seen offensive cartoons placed on her desk and posted on a bulletin board in the shift foreman's office. According to Burrell, these cartoons were demeaning to African–Americans and females. Instead of reporting the cartoons to her Human Resources Representative, Burrell testified that she collected them for over ten years because she thought she "might be able to use [them] one of these days." Indeed, while Burrell alleges that she was exposed to these cartoons for over ten-years, she

---

**3.** Summary judgment evidence is subject to the same rules that govern the admissibility of evidence at trial. *See Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 175–76 (5th Cir.1990), cert. denied, 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993). Because these comments were overheard by a coworker and subsequently relayed to Burrell, they are nothing more than inadmissible hearsay and cannot support Burrell's hostile work environment claim. *See* FED. R. EVID. 801(c); *Roark v. Kidder, Peabody & Co., Inc.,* 959 F.Supp. 379, 385 (N.D.Tex.1997).

never complained about them to anyone at Crown.

After deposing the eight named plaintiffs, Crown filed this motion for partial summary judgment against Burrell on her individual claims. In support of its motion, Crown argues that there is no genuine issue of material fact as to whether Crown knew or should have known about the alleged harassment experienced by Burrell and failed to take prompt remedial action, and, thus, Crown is entitled to summary judgment as a matter of law.

## II. LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *See id.* at 248, 106 S.Ct. 2505. The party moving for summary judgment has the burden to show that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *See id.* at 247, 106 S.Ct. 2505. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis in

original). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the non-movant's case. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. In this instance, the movant is not required to offer evidence to negate the nonmovant's claim. *See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED R. CIV. P. 56(e). The nonmovant must adduce affirmative evidence. *See Anderson,* 477 U.S. at 257, 106 S.Ct. 2505.

Summary judgment evidence is subject to the same rules that govern the admissibility of evidence at trial. *See Lavespere,* 910 F.2d at 175–76. In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the non-movant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The evidence of the non-movant, however, is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.*

## III. DISCUSSION

 A hostile work environment claim arises when a plaintiff alleges harassment "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment."[4] *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To prevail on her hostile work environment claims, Burrell must show that: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon her race and/or gender; (4) the harassment affected a term, condition or privilege of em-

---

**4.** In *Faragher v. Boca Raton,* the Supreme Court noted that "[a]lthough racial and sexual harassment will often take different forms, and standards may not be entirely interchangeable, we think there is good sense in seeking generally to harmonize the standards of what amounts to actionable harassment." 524 U.S. 775, 118 S.Ct. 2275, 2283 n. 1, 141 L.Ed.2d 662 (1998).

ployment; and (5) Crown *knew or should have known about the harassment experienced by Burrell and failed to take prompt remedial action*.[5] *See Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir.1996); *Waymire v. Harris County*, 86 F.3d 424, 428 (5th Cir.1996); *McCray v. DPC Indus., Inc.*, 942 F.Supp. 288, 292 (E.D.Tex.1996).

For purposes of its summary judgment motion, Crown contends that even assuming, *arguendo*, that Burrell could establish that she was subjected to a hostile environment, Crown cannot be held liable as a matter of law because there is no evidence that it knew or should have known of the alleged harassment and failed to take prompt remedial action. In fact, Crown points out that Burrell admits-in deposition testimony-that she never reported any of the alleged incidents of harassment to anyone at Crown. [*See* Def.'s Br. in Supp. of its Mot. for Partial Summ. J. on Pl. Loretta Burrell's Claims, Ex. A, Burrell Dep. at 297:20–298:9; 262:1–12; 338:9–340:6] Therefore, according to Crown, the only way that Burrell can survive summary judgment is to establish that there is a genuine issue of material fact as to whether Crown had constructive knowledge of the alleged harassment.

Burrell does not dispute that she never invoked Crown's established grievance procedure or otherwise attempted to report the alleged harassment to anyone at Crown. Instead, she relies on two Supreme Court decisions holding that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."[6] *Faragher v. Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2292–2293, 141 L.Ed.2d 662 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998) (decided the same day as *Faragher*). In other words, an employee is not required to show that the employer had actual or constructive knowledge of the harassment where the harassment is perpetrated by a supervisor with the requisite authority over the employee. "When no tangible employment action is taken, [however,] a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." *Id.* By adopting this holding, the Court sought to "accommodate the principle of vicarious liability for harm caused by misuse of supervisory authority, as well as Title VII's equally basic policies of encouraging forethought by employers and saving action by objecting employees...." *Faragher*, 118 S.Ct. at 2292; *Ellerth*, 118 S.Ct. at 2270. In any event, according to Burrell, the harassment was so open and obvious that Crown knew or should have known, and they failed to take prompt remedial action.

■ In light of the Court's decisions in *Faragher* and *Ellerth*, Crown moved to formally amend its original answer to assert its affirmative defense to liability.[7] [*See* Crown's Reply to Pls.' Resp. to Crown's Mot. for Partial Summ. J. on Pl. Loretta Burrell's Claims at 5 & n. 6] To establish an affirmative defense to liability

5. Hostile work environment claims brought under Title VII and § 1981 are analyzed under the same standards. *See Patterson v. P.H.P Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir.1996); *Johnson v. City of Fort Wayne*, 91 F.3d 922, 940 (7th Cir.1996).

6. In *Deffenbaugh–Williams v. Wal–Mart Stores, Inc.*, 156 F.3d 581, 593, the Fifth Circuit, discussing the *Faragher* and *Ellerth* decisions, concluded that "the Supreme Court intended to apply these same agency principles to all vicarious liability inquiries under Title VII for acts by supervisors, including racial discrimination." *But cf. Ellerth*, 118 S.Ct. at 2271 (Thomas, J., dissenting) (concluding that, as a result of the majority's decision, employer liability under Title VII is judged by different standards depending upon whether a sexually or racially hostile work environment is alleged).

7. Because Burrell does not allege that any tangible employment actions were taken in this case, her claims are subject to this affirmative defense. [*See* Pls.' Supplemental Opp'n at 3]

or damages, Crown must show: (a) that it exercised reasonable care to prevent and promptly correct any racially or sexually harassing behavior, and (b) that Burrell unreasonably failed to take advantage of any preventative or corrective opportunities provided by Crown or to otherwise avoid harm. *See Faragher,* 118 S.Ct. at 2293; *Ellerth,* 118 S.Ct. at 2270.

### A. Crown Exercised Reasonable Care to Prevent and Correct Promptly Any Racially or Sexually Harassing Behavior

█ According to the Supreme Court, with respect to establishing the first element of the affirmative defense, that is the employer's exercise of reasonable care to prevent and promptly correct any sexually or racially harassing behavior, "proof that an employer had promulgated an anti-harassment policy with a complaint procedure is not necessary in every instance as a matter of law, ..." *Faragher,* 118 S.Ct. at 2293; *Ellerth,* 118 S.Ct. at 2270. In this case, the undisputed summary judgment evidence establishes that Crown has two written anti-harassment policies, one specifically prohibiting sexual harassment and the other prohibiting, *inter alia,* both racial and sexual harassment. [*See* Def.'s Br. in Supp. of its Mot. for Partial Summ. J. on Pl. Loretta Burrell's Claims, Ex B, *Elbert Affidavit* at Tab 13 & 14] In this regard, the Supreme Court has observed that an employer's argument that it exercised reasonable care may be substantially stronger where the employer: (1) has an anti-harassment policy specifically addressing the particular harassment, (2) the policy provides for alternative means of reporting harassment, and (3) the policy has been communicated to the employees. *See Meritor,* 477 U.S. at 72–73, 106 S.Ct. 2399; *see also Pfau v. Reed,* 125 F.3d 927, 939–41 (5th Cir.1997) (finding that no genuine issue of material fact exists as to whether an employer had constructive notice of harassment where the summary judgment evidence indicates that the employer had a structured, accessible grievance procedure that the employee could

use to provide employer with actual notice of harassment).

Crown's Sexual Harassment Policy states, in pertinent part:

> *An employee of the Company who feels he/she has been subjected to sexual harassment is strongly encouraged to bring to the Company's attention any conduct which violates this policy.* No employee complaining about sexual harassment will be subjected to retaliation by the Company. It is the policy of the Company to investigate promptly and thoroughly any complaint of sexual harassment and take appropriate corrective action.

> Any employee who believes he/she has been the victim of sexual harassment, or has any knowledge of other employees engaging in sexual harassment is encouraged to report such conduct promptly to their supervisors. If *the complaint cannot be resolved at this level, or the employee is uncomfortable discussing the situation with his/her supervisor, the employee is encouraged to discuss his/her complaint in confidence with their [sic] Human Resources Representative.*

[*See* Def.'s Br. in Supp. of its Mot. for Partial Summ. J. on Pl. Loretta Burrell's Claims, Ex B, *Elbert Affidavit* at Tab 13 (emphasis added) ]

In connection with its Sexual Harassment Policy, Crown sponsored a full-day training seminar on sexual harassment to ensure that its employees were familiar with the Company's policy and complaint procedures. [*See id.* at ¶ 25] Burrell admits that she attended the seminar. [*See id.,* Ex. A, *Burrell Dep.* at 262:13–263:5] In fact, at the conclusion of the seminar, Burrell received and signed a copy of Crown's sexual harassment policy, which describes the Company's grievance procedure. [*See* Ex. B, *Elbert Affidavit* at Tab 15]

In addition to its Sexual Harassment Policy, Crown has an Equal Employment Opportunity ("EEO") Policy prohibiting

discrimination or harassment based upon, *inter alia,* race and/or sex. [*See id.,* Ex B, *Elbert Affidavit* at Tab 14] The summary judgment evidence reflects that Crown has communicated this policy to its employees by posting it on bulletin boards throughout the refinery. One of its stated purposes is "to provide a work environment for all employees which is free of harassment and intimidation . . . ." [*Id.*] And like its Sexual Harassment Policy, Crown's EEO Policy encourages "[a]ny employee who has a complaint or concern regarding any type of discrimination or harassment . . . to bring it to the attention of his or her immediate supervisor or the Employee Relations Department." [*Id.*]

In this case, it is difficult to imagine what more Crown could have done in its efforts to provide employees with a meaningful opportunity to report harassment and thereby enable the company to take prompt remedial action. The summary judgment evidence in this case demonstrates that Crown has an established grievance procedure, which is set forth in both its Sexual Harassment Policy and EEO Policy. Moreover, Crown's grievance procedure provides alternative means for an employee to raise a complaint the employee can raise his or her complaint with a supervisor or the employee can take his or her complaint to the Human Resources Representative. The summary judgment evidence also indicates that Crown's anti-harassment policies were communicated to Burrell and that she was aware of the company's grievance procedures. Based upon the foregoing, the court finds that Crown has satisfied the first element of its affirmative defense. That is, Crown exercised reasonable care to prevent and promptly correct any sexually or racially harassing behavior by its employees.

B. BURRELL UNREASONABLY FAILED TO TAKE ADVANTAGE OF THE CORRECTIVE MECHANISMS PROVIDED BY CROWN OR TO OTHERWISE AVOID HARM

■ With regard to establishing the second element of the affirmative defense-

that the employee unreasonably failed to take advantage of the preventative or corrective mechanisms provided in the employer's anti-harassment policies or to otherwise avoid harm-the Supreme Court notes that "while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." *Faragher,* 118 S.Ct. at 2293; *Ellerth,* 118 S.Ct. at 2270. It is undisputed that Burrell was aware of Crown's grievance procedures and that she failed to avail herself of those procedures to avoid or correct the alleged harassment. To explain her failure to invoke Crown's grievance procedure, Burrell cites a general fear of retaliation; yet, Burrell can point to only one instance where she believes an employee was retaliated against for attempting to report discrimination. [*See* Pls.' Opp'n to Def.'s Mot. for Partial Summ. J. on Pl. Loretta Burrell's Claims at 14–17] Moreover, the summary judgment evidence indicates that Burrell has successfully used Crown's grievance procedures in the past and suffered no retaliation by the company or any of its employees. [*See* Def.'s Br. in Supp. of its Mot. for Partial Summ. J. on Pl. Loretta Burrell's Claims, Ex. A, *Burrell Dep.* at 37:21–38:1 1; 38:15–18] In fact, Burrell admits that she was satisfied with the way her complaint was handled on that occasion. [*Id.*] Under the circumstances, it appears that Burrell's fear of retaliation was unjustified.

In addition to her fear of retaliation, Burrell claims that the supervisors' participation in the harassment, coupled with their failure to respond appropriately to harassment committed by others, discouraged her from making a complaint. [*See* Pls.' Supplemental Opp'n to Def.'s Mot. for Summ. J. Against Loretta Burrell's at 5] Burrell's argument might be more persuasive if Crown's complaint procedures did

not provide alternative means of reporting harassing behavior. Crown's grievance procedure, however, specifically states that if "the employee is uncomfortable discussing the situation with his/her supervisor, the employee is encouraged to discuss his/her complaint in confidence with their Human Resources Representative." [*See* Def.'s Br. in Supp. of its Mot. for Partial Summ. J. on Pl. Loretta Burrell's Claims, Ex B, *Elbert Affidavit* at Tab 13] Burrell has not alleged that she had any reluctance about reporting harassment to Crown's Human Resources Representative. Given Crown's alternative means for reporting harassment, the court finds that Burrell unreasonably failed to report the alleged harassment to Crown's Human Resources Representative.

Based on the foregoing, the court finds that Burrell's failure to take advantage of Crown's preventative or corrective mechanisms to avoid harm was unreasonable as a matter of law. In *Faragher,* the Court explained that "[i]f the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, and if damages could reasonably have been mitigated no award against a liable employer should reward a plaintiff for what her own efforts could have avoided." 118 S.Ct. at 2292. To hold otherwise would undermine Title VII's basic policy of encouraging victimized employees to promptly notify their employer when confronted with a hostile work environment. *See Faragher,* 118 S.Ct. at 2292; *Ellerth,* 118 S.Ct. at 2270.

C. Alleged Hostile Environment Not Sufficiently Pervasive to Charge Crown with Constructive Knowledge

Burrell correctly points out that "[a] Title VII plaintiff can show *constructive* notice by showing the pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive knowledge.'" *Canutillo Independent School Dist. v. Leija,* 101 F.3d 393, 401 (5th Cir.1996) (citing *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 478 (5th Cir.1989)).

In this case, however, the specific instances cited by Burrell, while perhaps creating a fact issue as to whether she was exposed to a hostile environment, do not create a genuine issue of material fact as to whether the harassment was so open and obvious that Crown should be charged with constructive notice of it. *See Pfau,* 125 F.3d at 939. Although Burrell contends that she has been exposed to a hostile environment for over ten years, she can recall relatively few instances of offensive comments and behavior during that time, many of which are at best ambiguous as to whether race or sex was the motive. The court finds further support for its conclusion by the very fact that the summary judgment evidence indicated that Crown had a structured, accessible grievance procedure that Burrell could have used to provide Crown with actual notice of her harassment. *See id* at 940. Therefore, to the extent that Burrell seeks to charge Crown with constructive notice of a hostile work environment created by Crown's employees or supervisors, the court finds that Burrell has failed to allege sufficient facts to create a genuine issue of material fact as to whether the conduct was so pervasive that Crown knew or should have known of its occurrence.

IV. Conclusion

Based upon the foregoing, the court is of the opinion that Crown exercised reasonable care to prevent and promptly correct any harassing behavior and that Burrell unreasonably failed to take advantage of Crown's preventative or corrective opportunities or to otherwise avoid harm. Therefore, Crown's Motion for Partial Summary Judgment is hereby GRANTED and Burrell's remaining claims are hereby DISMISSED.

It is so ORDERED.